■ JENNY MARKSON, Respondent, v JAMES J. MARKSON, Appellant.—In a matrimonial action, the defendant husband appeals from so much of an order of the Supreme Court, Kings County (Schneier, J.), dated June 29, 1987, as granted the plaintiff's motion to direct him to execute a contract for the sale of certain premises at a gross price of not less than $385,000 and denied his cross motion to direct the plaintiff to execute a contract for the sale of the premises to him for the sum of $270,000.

Ordered that the order is reversed, insofar as appealed from, on the law, with costs, the plaintiff's motion is denied and the defendant's cross motion is granted to the extent that the plaintiff is directed to execute a contract for the sale of the premises to the defendant, as purchaser, for the sum of $270,000.

The parties herein were married on August 26, 1972. On or about May 15, 1986, the plaintiff wife commenced an action for divorce. On January 14, 1987, the parties appeared in the Supreme Court, Kings County, for purposes of entering into an on-the-record stipulation of settlement. This stipulation, in pertinent part, provided that the marital residence, located at 2803 Batchelder Street, Brooklyn, and the adjoining vacant lot were to be placed on the open market and sold for the "best possible price". The period within which offers were to be received was expressly fixed at 60 days. The stipulation fur-

ther provided that the defendant husband would have 60 days from the presentation of an offer to determine whether he wished to sell the house separately and retain title to the adjoining lot. In the event the defendant exercised this option, he would be required to remit to the plaintiff 50% of the net proceeds she would otherwise have received had the house and lot been sold together. Upon receipt of these proceeds, the plaintiff would then transfer her interest in the lot to the defendant. A judgment of divorce expressly incorporating the terms of the stipulation was issued thereafter.

It appears that the 60-day measuring period during which offers to purchase the subject premises were to be received commenced to run on January 23, 1987. The "best possible" purchase price received within this 60-day period was $270,000. Subsequent thereto, but within the time constraints delineated in the stipulation, the defendant exercised his option to retain title to the adjoining lot. He further advised the plaintiff that he wished to purchase the marital residence for the sum of $230,000 and was prepared to ensure that plaintiff "receives what she would have received if the house and lot were sold together for $270,000, pursuant to the stipulation, that being the best offer obtained".

Following the expiration of the 60-day period, several offers to purchase the house and lot, for a price in excess of $270,000, were submitted. The plaintiff, by order to show cause dated April 23, 1987, requested that the court issue an order compelling the defendant to execute a contract for the sale of the subject premises for the sum of $350,000, which represented the highest offer submitted at that juncture. The defendant subsequently cross-moved to compel the plaintiff to accept his offer to purchase the premises for the sum of $270,000.

In an oral decision rendered May 21, 1987, the Supreme Court concluded that the defendant, by the terms of the stipulation, was precluded from purchasing the marital residence and that his option merely extended to the adjoining lot. The court further declared that the premises should be sold to a third party for a gross price of not less than $385,000, which was commensurate with the highest offer received. An order incorporating the terms of this decision was issued on June 29, 1987. The defendant now appeals.

We find that defendant's cross motion to compel the plaintiff to accept his offer to purchase should have been granted. The stipulation of settlement, which was entered into in open court, expressly provided that bids on the subject property

were to be received within a 60-day period and that the "best possible price" offered within this time frame would be honored. The Supreme Court, by requiring the acceptance of an offer received after the 60-day period had elapsed, acted in contravention of the stipulation. Since the terms of that agreement are, however, binding upon the parties and the court, the premises should be sold for the best possible price received within the confines of the 60-day measuring period. That price, as reflected in the record, is $270,000. We further note that inasmuch as the third-party offers were apparently premised upon the sale of both the house and adjoining lot and since the defendant timely exercised his option to retain title to the lot, the only outstanding offer which incorporated the "best possible price" and which was made within the period designated in the stipulation was the defendant's offer. Contrary to the conclusions of the Supreme Court, nothing in the stipulation expressly precluded the defendant from participating in the bidding process. The fact that the defendant specifically reserved the right to retain title to the adjoining lot does not, in our opinion, signify a relinquishment of his right to submit a competitive bid with respect to the marital residence. Accordingly, the order appealed from is reversed, and the plaintiff is directed to execute a contract for the sale of the premises to defendant, as purchaser, for the sum of $270,000, in accordance with the terms of the stipulation and judgment of divorce. Kunzeman, J. P., Rubin, Eiber and Sullivan, JJ., concur.